# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JAMES ANTONIO CAPELL,

        Petitioner,    :    Case No. 1:12-cv-905

  - vs -                          District Judge William O. Bertelsman
                                    Magistrate Judge Michael R. Merz

WARDEN, London Correctional
  Institution,

                             :

        Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner James Antonio Capell brought this habeas corpus action *pro se* under 28 U.S.C. § 2254 to obtain relief from his conviction and sentence in the Hamilton County Common Pleas Court on charges of felonious assault and domestic violence for which he is serving a sentence of thirteen years confinement in Respondent's custody (Petition, Doc. No. 1, ¶¶ 1, 3, 5). He pleads the following grounds for relief:

> **Ground One:** Petitioner was deprived of due process of law and of the assistance of competent counsel by the district court denying substitution of counsel.
>
> **Supporting Facts:** Prior to the start of trial, Petitioner advised the court that his counsel was not prepared for trial and there were serious issues, and that he had substitute counsel immediately available. The trial court, rather than inquire as to whether the breakdown in attorney-client communications was complete and irrevocable, simply denied the substitution on the grounds that the trial court "gets to decide who your lawyer is, not you."
>
> **Ground Two:** Petitioner was deprived of the effective assistance of counsel guaranteed by the 6th and 14th Amendments by counsel's deficient performance at trial.

1

>**Supporting Facts:**  Counsel's performance eviscerated the adversarial testing process, failed to vigorously defend the case, providing cursory opening and closing arguments, asking only six questions of the primary state fact witness, and failed to permit Petitioner to testify after promising the jury he would in opening argument.  A sidebar in which counsel stated to the trial court that he was uncomfortable with Petitioner demonstrates the breakdown in the relationship and underscores the ineffectiveness of counsel. The resulting prejudice is both presumed, and manifest, in that no defense was presented to the jury.
>
>**Ground Three:**  Petitioner was deprived of due process of law under the Fifth Amendment where there was insufficient evidence to prove each essential element of the charged offenses beyond a reasonable doubt.
>
>**Supporting Facts**:  There was no evidence whatsoever to support the essential element of cohabitation to convict on the Domestic Violence, and insufficient to convict on felonious assault.
>
>**Ground Four:**  Petitioner's right to protection against Double Jeopardy was violated by multiple punishment for "allied offenses" based upon a single animus.
>
>**Supporting Facts:**  The offenses of domestic violence and felonious assault occurred as a result of one action attributed to Petitioner, with a single animus and for which only one punishment is constitutionally permitted.  He was instead subjected to multiple and consecutive sentences for a single offense.

*Id.* On Magistrate Judge Litkovitz's Order (Doc. No. 4), the Warden has filed a Return of Writ (Doc. No. 8), and Petitioner has filed a Reply (Doc. No. 9).  Thus the case is ripe for adjudication.

**Procedural History**

Petitioner was indicted by the Hamilton County Grand Jury on one count of domestic violence with the specification that he had two or more previous convictions of that offense and

one count of felonious assault. After a mistrial, Capell was tried a second time to a jury and convicted on both counts, resulting in the thirteen year sentence he is serving. He appealed to the First District Court of Appeals which affirmed. *State v. Capell,* Case No. C-100798 (1st Dist. Oct. 26, 2011)(unreported, copy at Return of Writ, Doc. No. 8, Ex. 9, PageID 252-54). The Ohio Supreme Court permitted the filing of a delayed appeal, but declined to reach the merits, finding there was no substantial constitutional question. *State v. Capell*, 131 Ohio St. 3d 1553 (2012). The instant habeas corpus petition followed on November 23, 2012. The Warden concedes the Petition is timely and that merit review is not barred by any procedural default (Return of Writ, Doc. No. 8, PageID 33-38).

**Analysis**

**Ground One: Denial of Substitution of Counsel**

In his First Ground for Relief, Capell claims he was denied due process of law when the trial court refused to permit substitution of counsel. Petitioner raised this claim on direct appeal as his first assignment of error, arguing:

> In this case, Appellant believed that his trial counsel was not vigorously representing him, especially in light of the serious nature of his charges. There was clearly tension and conflict which interfered with preparation of Appellant's defense and counsel's handling of the trial. Trial counsel even told the trial court, during the trial, that Appellant was staring at him, like he wanted to kill him, because he believed counsel was not doing his job.

(Appellant's Brief, Return of Writ, Doc. No. 8, Ex. 7, PageID 226.) No record references are given in the Brief. In his Reply, Capell also gives no record references, merely asserting that

3

"prior to the start of trial, he advised the court that his attorney was not prepared for trial and there existed issues and that he had substitute counsel immediately available." (Reply, Doc. No. 9, PageID 287.) Thus Petitioner has furnished no record evidence to this Court that would show his counsel was unprepared or that there had been a complete breakdown of communications or irreconcilable differences between counsel and client.

Capell's trial counsel was appointed and he desired to have substitute counsel also appointed at state expense. In denying relief on this assignment of error, the First District held:

> Because Capell failed to demonstrate that good cause existed for new counsel, such as an irreconcilable conflict between Capell and his counsel, or a complete breakdown of communication, the trial court did not err in denying Capell's motion. *State v. Sheppard*, 1st Dist. Nos. C-060042 and C-060066, 2007-Ohio-24, ¶ 15. Consequently, we overrule Capell's first assignment of error.

*State v. Capell, supra,* PageID 252.

Indigent criminal defendants are entitled to appointment of counsel to represent them as every critical stage of criminal proceedings. *Powell v. Alabama*, 287 U.S. 45 (1932)(capital cases); *Gideon v. Wainwright*, 372 U.S. 335 (1963)(felony cases); *Argersinger v. Hamlin,* 407 U.S. 25 (1972)(misdemeanor cases where imprisonment is a possibility); *Alabama v. Shelton,* 535 U.S. 654 (2002)(even if sentence is suspended). However, there is no constitutional right to have counsel of one's choice appointed.

When a trial court considers a defendant's request to substitute counsel in the middle of court proceedings, the court must balance an accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. *Wilson v. Mintzes*, 733 F.2d 424, 427–28 (6th Cir. 1984), *aff'd on remand*, 761 F.2d 275, 280–81 (6th Cir. 1985) (holding that when a defendant seeks substitution of counsel mid-trial, he must show good cause, such as

conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney to warrant substitution).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Capell concedes that the First District decided this claim on the merits, but asserts it did not "review controlling United States Supreme Court law announced while this matter was pending upon direct appeal," citing, *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012)(Reply, Doc. No. 9, PageID 287). While Capell is correct that the First District did not discuss *Frye*, that is probably because *Frye* is not relevant. The question in *Frye* was whether a defendant is entitled to the effective assistance of counsel during plea negotiations, not whether an indigent defendant is entitled to counsel of choice.

The First District did not cite any Supreme Court precedent at all, but that is also not determinative. The question under 28 U.S.C. § 2254(d)(1) is whether the state court decision is contrary to or an unreasonable application of Supreme Court precedent, whether that precedent has been cited or not. *Harrington v. Richter, supra*.

The First District expressly relied on its own prior decision in *State v. Sheppard*, 2007-Ohio-24, 2007 Ohio App. LEXIS 17 (1st Dist. Jan. 5, 2007). *Sheppard* relied in turn on *State v. McNeill,* 83 Ohio St. 3d 438 (1998). *McNeill* in turn held "[t]here is no constitutional right to a "meaningful attorney-client relationship."" *Morris v. Slappy* (1983), 461 U.S. 1, 13-14, 103 S.

Ct. 1610, 1617, 75 L. Ed. 2d 610, 621. There is only a right to professionally competent, effective representation." 83 Ohio St. 3d at 452.

Capell has not demonstrated that the court of appeals decision here was an objectively unreasonable application of *Morris v. Slappy* or any other United States Supreme Court precedent. The First Ground for Relief is therefore without merit.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Capell contends he received ineffective assistance of trial counsel. The Warden defends this claim on the merits, asserting that the First District's decision was neither contrary to nor an objectively unreasonable application of the controlling United States Supreme Court precedent, *Strickland v. Washington,* 466 U.S. 668 (1984).

Capell raised this claim as his second assignment of error on direct appeal. The First District overruled it, holding "[i]n light of the evidence against Capell, he has failed to show that counsel's alleged deficient performance caused him prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S. Ct. 2052. We overrule Capell's second assignment of error." *State v. Capell, supra*, PageID 253.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

> showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

In arguing this Ground for Relief, Capell makes no attempt to show prejudice, but instead makes the same argument he did with respect to Ground One. The standards, however, are different and Capell's failure to show any prejudice is fatal to his Second Ground for Relief, which should be dismissed with prejudice.

7

**Ground Three:  Insufficient Evidence**

In his Third Ground for Relief, Capell claims he was denied due process when he was convicted on insufficient evidence, particularly asserting there was no evidence of cohabitation to support the domestic violence conviction and insufficient evidence on all elements of felonious assault.

Capell raised this claim, as well as a claim that his conviction was against the manifest weight of the evidence, as his fourth assignment of error on direct appeal.  The First District summarily rejected it, stating "[w]e overrule Capell's fourth assignment of error . . . on the authority of *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492, paragraph two of the syllabus, and *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E. 2d 541." *State v. Capell, supra*, PageID 253.

In his Reply, Capell argues that the *Jackson v. Virginia*, 443 U.S. 307 (1979), standard relied on by the State is the wrong standard and has been "abrogated within the more appropriate standard set forth within *Schlup v. Delo,* 513 U.S. 298 (1995); applied within the Sixth Circuit *House v. Bell*, 311 F.3d 767, 778 (6th Cir. 2002).  Published opinions of the Sixth Circuit are binding as law of the Circuit.  6th Cir. R. 206(c)." (Reply, Doc. No. 9, PageID 289.)

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

Capell misunderstands *Schlup, supra.*  In that case the United States Supreme Court developed the standard for a habeas petitioner to show he is actually innocent of an offense so as to excuse a procedural default which would otherwise bar merits review of a habeas claim.  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  *House v. Bell*, 547 U.S. 518 (2006), as it was eventually decided in the Supreme Court, is an application of *Schlup* and not an abrogation of *Jackson*.  As recently as last year the Supreme Court continued to apply *Jackson* as the controlling law.  *Coleman v. Johnson*, 132 S. Ct. 2060 (2012).

Capell makes no argument respecting the evidence at all in his Petition or his Reply.  As to proof of cohabitation, the State on direct appeal cites Capell's own trial testimony which supports that element (Appellee's Brief, Return of Writ, Doc. 8, PageID 247.)  Although Capell himself denied he had assaulted Hillman, the victim, she testified that he had done so and her testimony was corroborated by witnesses Williams and Johnson-Riddle, the latter being an eyewitness to the beating.  *Id.*  Indeed, in his Reply, Capell admits striking Hillman (Reply, Doc. No. 9, PageID 290).

9

The First District's decision is plainly a reasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979), *supra*. Capell's Third Ground for Relief should be dismissed with prejudice.

**Ground Four: Double Jeopardy**

In his Fourth Ground for Relief, Capell claims his punishment for both domestic violence and felonious assault violates his rights under the Double Jeopardy Clause because the offenses were committed with a single animus and thus constitute a single offense for double jeopardy purposes.

Capell argued this claim as part of his fifth assignment of error on direct appeal. The First District overruled the assignment, holding:

> Capell further argues that the trial court erred by failing to merge his domestic-violence and felonious-assault offenses as allied offenses of similar import under R.C. 2941.25, Because the offenses were committed separately and with a separate animus, Capell was properly convicted of each offense. *State v. Lanier,* 192 Ohio App. 3d 762, 2011-Ohio-898, 950 N.E. 2d 600, ¶ 23. We overruled Capell's fifth assignment of error.

*State v. Capell, supra*, PageID 253.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717

(1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

In this case the First District interpreted Ohio Revised Code § 2941.25 as permitting multiple punishments because it found both that the offenses were committed separately and that they were committed with a separate animus. *State v. Capell, supra*, PageID 253.

Capell disagrees, claiming the Ohio Supreme Court has determined that domestic violence and felonious assault are allied offenses of similar import (Reply, Doc. No. 9, PageID 290), *citing State v. Harris*, 122 Ohio St. 3d 373 (2009). That simply is not the holding in *Harris*, which did not involve a domestic violence charge. Rather, in *Harris*, the Ohio Supreme Court

11

held that the charges of robbery and aggravated robbery in that case were allied offenses of similar import. Capell also cites *State v. Damron*, 129 Ohio St. 3d 86 (2011), for the proposition that *Harris* is still good law in Ohio. While recognizing that fact, the Ohio Supreme Court also held "*Harris* never stood for the proposition that the offenses of felonious assault and domestic violence must merge as a matter of law." *Damron*, 129 Ohio St. 3d at ¶ 17.

In arguing this claim in his Reply, Capell admits that there were "multiple periods of attack," but claims that they are all part of a "continuous criminal action." (Doc. No. 9 at PageID 290.) He recites the federal standard that requires us to defer to a state court's interpretation of its own statutes, but then says "this court must conclude that the interpretation of the of the [sic] Ohio legislature's intent is misplaced. . . ." *Id.* at 291-92. That we cannot do; we are bound by the First District's interpretation of what Ohio Revised Code § 2941.25 means.

Nor has the First District engaged in an unreasonable determination of the facts, based on the evidence presented. The Warden summarizes the evidence of record as follows:

> As argued by the State, the actions engaged in by Capell were not all part of a continuous act that was the result of a single animus or reason for committing the act. (Exhibit 8, pp. 11, "the acts first took place outside, then inside, then outside, then inside again.")
>
> To wit, the appellate court in *State v. Capell,* must have reasoned as follows. Capell first became angered because the victim's son locked the door to Hillman's home and, after shouting at the son, Hillman chastised him; Hillman later upset him by accidentally breaking his phone charger. These offenses triggered the first attack by Capell on Hillman. After the first attack, during which Capell grabbed her by the neck on the back porch and told her to get into the house, ordered her into the bedroom, slammed her onto the bed in the bedroom and began choking her, he then stopped choking her.
>
> He then told her to get her ID for some reason. When Hillman told him her ID was in the car, Capell hit her in the head with keys and told her he was going to get a knife and stab her. This was a second attack motivated by this inconvenience.

12

> Hillman then fled the house. Capell then, instead of getting the knife and following her down the street to complete this attack, chased her down the street and began punching her in the face. He told her to get back in the house. Thus Hillman's flight provoked this third attack.
>
> When Hillman began to make her way back to the house, she fell. Capell then began to kick her, apparently provoked by her fall. This was a fourth attack based upon this new provocation.
>
> Hillman then told Capell that if he let her go she would go back to the house. When he let her up, she ran inside locking and shutting the door. This betrayal resulted in Capell breaking into the house through the window, a fifth attack. When he opened the door he continued this assault by knocking her to the ground.
>
> Hillman then tried to call the police. This resulted in Capell hitting her in the head, splitting her ear open and, when she dropped the phone, bludgeoning her with the phone. This sixth attack was motivated by, that is resulted from an animus, of punishing Hillman for her attempt to seek help.
>
> Capell then forced Hillman to shower, telling her he would smash her head into a wall if she did not. After she showered, he made her get into bed and completed what might be considered a seventh attack by laying on her until the next morning.
>
> Since each attack was made with a separate animus, the attacks made outside the home were easily charged as felonious assault and those inside the home were easily charged as domestic violence. Capell was therefore lucky he was only charged with one count of each instead of multiple counts of felonious assault and multiple counts of domestic violence. As stated by the State on appeal, "Since they took place in different locations and ultimately required him to break into the home to take more acts against Hillman, his crimes were not allied." (Exhibit 8, p. 11.)

(Return of Writ, Doc. No. 8, PageID 50-52.) Capell's argument seems to be that since he got angry with Hillman and stayed angry at her, he could not be convicted of separate offenses no matter how many times he hit her. This is far different from the situation in *Lanier* where the Ohio Supreme Court held that if someone points a semiautomatic handgun at someone else and fires multiple shots, he can only be convicted of one felonious assault.

13

To the extent the First District made a determination that Capell's strikings of Hillman were sufficiently separated in time to constitute separate acts and that he acted with a new animus as to each of them, its determination is not an unreasonable determination of facts based on the evidence of record. Its determination that Ohio Revised Code § 2941.25 permits separate punishments under these circumstances is binding on this Court and that determination is fatal to Capell's Fourth Ground for Relief which should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

March 11, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).